UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARVIN PROFITT,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>LAKE COUNTY PROBATION DEPARTMENT, et al.,<br><br>　　　　Respondents. | Case No. 17-cv-07136-JD<br><br>**ORDER RE PETITION FOR WRIT OF HABEAS CORPUS AND CERTIFICATE OF APPEALABILITY** |

Marvin Profitt, a former prisoner and probationer, filed a habeas petition pursuant to 28 U.S.C. § 2254. The Court ordered respondent to show cause why the writ should not be granted. Respondent filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the Court. Profitt filed a reply. The petition is denied.

## BACKGROUND

A jury found Profitt guilty of felony driving with a blood alcohol content of .08 or higher, misdemeanor driving with a suspended licensed for driving under the influence ("DUI"), misdemeanor driving with a license suspended for driving with an excessive blood alcohol content and misdemeanor driving with a license suspended or revoked for other reasons. *People v. Profitt*, 8 Cal. App. 5th 1255, 1259 (Feb. 27, 2017). For sentencing purposes, Profitt had three prior misdemeanor DUI convictions. *Id*. Profitt was sentenced to three years in county jail, the last year on mandatory supervision. *Id*. at 1262. On February 27, 2017, the California Court of Appeal affirmed the judgment in a partially published opinion. *Id*. at 1258; Answer Exs. D-E. The California Supreme Court denied review on June 14, 2017. Docket No. 12, Ex. E.

The California Court of Appeal summarized the facts as follows:

> The following evidence was presented at trial. On February 23, 2013, at about 10:00 p.m. in Lakeport, California Highway Patrol Officer Ryan Erickson observed a pickup truck cross a limit line before coming to a complete stop at a stop sign, and later observed the truck's left tires cross over double solid yellow lines as it proceeded down Soda Bay Road. The truck then turned onto a residential street and Erickson thought "perhaps [the driver] would get away with one for the evening. He made it home and he was safe to go." However, the truck made a U-turn and returned to Soda Bay Road. Erickson testified: "[T]hat immediately alerted me to the fact that perhaps the driver's allowing me to pass so I will no longer be following him . . . . I recognized that as what I call a cat and mouse game." Erickson left the road to let the truck pass and then resumed following the truck. "It took [Erickson] a little bit to catch up," and he then saw the truck make an abrupt left turn. Erickson activated his emergency lights and pulled the truck over for an investigation.
>
> Erickson walked to the driver's door and spoke to the driver, Profitt. He noticed Profitt's eyes were red and watery, his breath smelled strongly of alcohol, his speech was slurred, and his demeanor was argumentative, angry or upset. Profitt told Erickson he was on his way home from a casino, he had drunk four Coors Light beers between 5:00 and 9:30 p.m., and his license was suspended. Erickson conducted a number of field sobriety tests (FST's), and Profitt displayed mental and physical impairment in all five tests. After the FST's, Erickson gave Profitt a preliminary alcohol screening (PAS) breath test. At 10:34 p.m., the PAS reading of his BAC [blood alcohol content] was 0.113 percent, and at 10:36 p.m. the reading was 0.109 percent. Erickson concluded Profitt was too impaired to drive and placed him under arrest. FN. 3. Profitt took an evidentiary breath test (EPAS) at 11:00 p.m. and again at 11:04 p.m. The EPAS registered a BAC of 0.13 percent.
>
> > FN. 3. California Highway Patrol Explorer Ryan Call, a young volunteer who was interested in law enforcement, was a "ride-along" with Erickson at the time of the stop. Call testified that he stood by Erickson while Profitt performed the FST's, and Profitt smelled of alcohol and performed poorly on the FST's. Profitt was also wobbly, a bit argumentative, and his [speech] was slightly slurred. He seemed too impaired to drive safely.
>
> Erickson's vehicle was equipped with a mobile video/audio recording system programmed to retain recordings from one minute prior to activation of the vehicle's emergency lights. The recording of Profitt's traffic stop was played for the jury.
>
> Anthony Valerio, a senior criminalist from the California Department of Justice with training in forensic alcohol analysis, testified that the PAS and EPAS test results indicated Profitt's BAC was rising during the interval between the tests. For Profitt's BAC to have risen from a hypothetical 0.07 percent when stopped by

2

Erickson to the 0.13 percent EPAS measurement one hour later, Profitt would have had to have drunk approximately three and a half beers (42 ounces of 4.2 percent beer or an equivalent amount of alcohol) over time to get his BAC up to 0.07 percent and then drink the equivalent amount of alcohol all at once just prior to driving so that much of the latter alcohol remained in his stomach at the time of the stop. On cross-examination, defense counsel posited that Profitt might have drunk shots of hard alcohol just before leaving the casino. Valerio said if Profitt did not have the alcohol equivalent of three and a half beers in his stomach when stopped by Erickson, the breath test results and Profitt's performance on the FST's indicated that Profitt-prior to the stop-was too impaired to drive.

Profitt's Department of Motor Vehicles (DMV) record was admitted in evidence. The record disclosed a 1998 conviction under section 23152, subdivision (a); a 2007 conviction under section 23152, subdivisions (a) and (b); and two 2009 convictions under section 23152, subdivision (a). The court told the jury the record was relevant only to the misdemeanor license suspension counts and was "not to [be] consider[ed] for any purpose as to the DUI charges, Counts 1 and 2. It has nothing to do with those."

The defense presented expert testimony by Jeffery Louis Zehnder, a forensic toxicologist, who opined that Profitt's reported performance on the FST's did not conclusively show he was impaired while driving. Only three of the FST's given (horizontal gaze nystagmus, one-leg stand, and walk and turn) were standardized tests accepted by the National Highway Traffic Safety Administration. While the administered Romberg test was supported by scientific studies and had some value, Profitt's performance on the test did not indicate alcohol impairment. Further, Profitt was 63 years old at the time of the FST's and the walk-and-turn and one-leg tests were not very useful in detecting impairment in older people, who tend to have balance problems without alcohol consumption. Zehnder testified that Profitt's rising BAC level indicated he was absorbing alcohol at the time of the tests, which would tend to overstate BAC results, and Profitt's BAC probably was lower when he was driving than when he was tested. Absorption rates also vary widely among individuals and circumstances, and a person who took "four shots of 12 ounces simultaneously" could reach a peak BAC anywhere as long as an hour and a half thereafter. "[E]specially with [Profitt's] relatively good performance on the [FST's], . . . there'' no way to conclude he was at or above an .08" when he was stopped.

The prosecutor began his closing argument by discussing the misdemeanor charges and Profitt's prior DUI convictions. The court again admonished the jury that the DMV record was not relevant to Counts 1 or 2. Regarding felony Count 2, the prosecutor argued that for Profitt's BAC to have been below 0.08 percent when he was driving, the jury would have to believe Profitt had three and a half beers all at once after already drinking three and a half beers, and then "with all this unabsorbed booze sitting in his stomach, he gets in his car and begins to drive . . . home . . . clear on the other side of the lake in a ridiculous attempt to race the alcohol home . . . . [¶] . . . [¶] . . . Is that a drinking pattern that we see often? . . . It is much more probable and . . . common that a person simply has one

3

for the road, not three and a half for the road, . . . [¶] . . . [and] then it necessarily follows mathematically that he was an .08 or more at the casino before he started driving." On Count 1, the prosecutor reviewed the evidence that Profitt was too impaired to drive: his Vehicle Code violations while driving, his physical appearance and impairment, and his exercise of poor judgment in choosing to drive after drinking and with a suspended license.

Defense counsel began his closing argument by critiquing three themes in the prosecution's closing: fear ("we don't want to have those big, bad drunk drivers on the road. Therefore, . . . [if y]ou think he's a little bit guilty, convict him"); the misdemeanors ("he's committed prior drunk driving offenses, therefore he must be guilty now . . . even though the judge has instructed you to the contrary"); and "bad math" ("an assumption . . . that the absorption rate is a fixed amount for every person"). Counsel conceded guilt on the misdemeanors and repeatedly reminded the jury that the prior DUI convictions could not be considered with respect to the felonies. On the felony counts, he minimized evidence of Profitt's physical impairment during the traffic stop and faulted Erickson for not videotaping the FST's. Counsel also emphasized Profitt's rising BAC results, Zehnder's testimony that absorption rates vary greatly among individuals, and the testing devices' margins of error. He argued it was not a crime to simply drink and drive, and the jury needed to find beyond a reasonable doubt that Profitt was impaired or had a BAC of 0.08 percent or greater while driving.

In rebuttal argument with respect to the misdemeanor charges, the prosecutor encouraged the jury to look at Profitt's DMV record to see that Profitt "was told . . . ten times" his license was suspended, but "despite prior warnings, [he] was out on the road again." He also argued, "[T]he important message that we want to send here is the message to this defendant, 'Don't do this. This is dangerous. It's so dangerous, it's criminal.'".

*Profitt*, 8 Cal. App. 5th at 1258-62 (alterations and omissions in original) (footnote omitted).

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

4

A state court decision is "contrary to" Supreme Court authority only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *See Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000). In conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The state court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the Court looks to the last reasoned opinion. *See Nunnemaker* at 801-06; *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). In this case the Court looks to the opinion of the California Court of Appeal for the sole claim in the petition.

As grounds for federal habeas relief, Profitt alleges that trial counsel was ineffective for making several inappropriate comments in closing argument. Trial counsel stated that Profitt was a fool for not pleading guilty to the misdemeanor charges of driving with a suspended license and that he, trial counsel, was not much of a drinker and did not want drunk drivers on the road. Answer Ex. E at 16-17.

# INEFFECTIVE ASSISTANCE OF COUNSEL

**Legal Standard**

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id*.

To prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient in that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. *See Cullen v. Pinholster*, 563 U.S. 170, 202 (2011); *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (same). The rule of *Strickland* to review a defense counsel's effectiveness with deference gives the state courts leeway in reasonably applying that rule, which "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The "question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. *See, e.g., Demirdjian v. Gipson,* 832 F.3d 1060, 1072-74 (9th Cir. 2016) (denying ineffective assistance claim for defense counsel's decision to rebut prosecutor's comments in closing argument rather than object at trial).

**Background**

Trial counsel sought to bifurcate the misdemeanor counts from the felonies to prevent the prior DUI convictions and license suspensions from being admitted and discussed during the guilt

phase of the felony trial. *Profitt*, 8 Cal. App. 5th at 1263. The trial court denied the motion to bifurcate.[1] In order to prevent the prior DUI convictions from being heard by the jury, trial counsel said that Profitt would plead guilty to the misdemeanors. Answer Ex. E at 16. But Profitt refused to plead guilty to the misdemeanors. *Id*. In his opening statement trial counsel told the jury:

> It's going to be clear to you eventually that [Profitt] was driving without a proper license. . . . There may be some quibbling issues over why the license was suspended, but really as a practical matter, those make zero difference. The fact of the matter is his license was suspended. [¶] And as to Counts 3 through 5, some or all of those are likely to be found to be true.

Answer Ex. E at 16 (alterations and omissions in original). In closing arguments trial counsel argued that the jury should not convict Profitt of the felony driving under the influence just because he had been convicted of the same offenses in the past. Reporter's Transcript ("RT") at 388.

With respect to the misdemeanor counts of driving with a suspended license, trial counsel stated:

> But it's an uncontested issue. Let's face it. I mean, I told you when we started you weren't going to be dealing with the questions in Counts 3 through 5 [the misdemeanor counts]. Mr. Profitt did not stand before you and present evidence contradicting it. It's a nonissue. The only reason we're hearing about the DUIs is because, amongst other things, Mr. Profitt it too much of a fool to plead guilty to them and keep it out of court. But more importantly, it's your consideration of the evidence solely relating to the DUI that counts.

RT at 388. Trial counsel continued to argue quite extensively that the prosecution had not met its burden of showing that Profitt had a blood-alcohol level of .08 or higher and that the prior convictions were irrelevant. RT at 388-96.

Profitt now contends that trial counsel's statement that Profitt was a fool for not pleading guilty to the misdemeanor counts amounted to ineffective assistance of counsel. Profitt filed a

---

[1] The California Court of Appeal affirmed the trial court's decision denying the motion to bifurcate on direct appeal in the published decision. *Profitt*, 8 Cal. App. 5th at 1262-69. Profitt did not raise bifurcation as an issue in the petition.

7

motion for a new trial over the issue. The trial court denied the motion:

> the [fool] comment "was appropriately a strategic move. I observed it. And I also heard the tone of voice, the presentation. In my opinion, it was [trial counsel's] attempt to depict his client as unsophisticated and thereby engender sympathy with the jury. I know that's what was intended. He was only referring to the minor charges in this case to which there was no defense. . . . [¶] . . . And you['ve] got to look at the entire case as a whole . . . . [Trial counsel is] a very effective attorney."

Answer Ex. E. at 16-17 (alterations and omissions in original).

Profitt also says that trial counsel was ineffective for another statement made in closing arguments:

> It is not a crime in California to drink and drive or even to be a little bit drunk. It is not a crime in California to drink and drive or even to be a little bit drunk. It is not a crime in California to drink and drive. The fear that is thrown at you, "Oh, we can't have anybody on the road. He thought to take a drink, and therefore." And that's not a crime. Maybe it should be. I mean, I'm really not a drinker, so I'm not probably the guy that Mr. Profitt should have found to do his case for him, I suppose. But I'm not much of a drinker, so I'm certainly right there with [the prosecution]. I don't want fools out there on the road drinking and driving any more than any of the rest of you do.

RT at 396. Profitt contends that the not-a-drinker statements constituted ineffective assistance of counsel. Right after these comments, trial counsel added:

> But what I want more, what I want more than stopping that is that we have a system of justice that does not convict people because we don't like them, a system of justice that only results in convictions when the People have met their burden.
>
> "Freedom is not worth having if it does not connote freedom to err. It passes my comprehension how human beings, be they ever so experienced and able, can delight in depriving other human beings of that right." It's not a crime to drink and drive. We don't like it maybe. Maybe you should, maybe you shouldn't. But we're not so rigid a society yet that we're imposing great criminal sanctions on people for doing things that we consider to be inappropriate or foolish choices.

RT at 396-97.

**Discussion**

The California Court of Appeal evaluated and denied these claims:

8

We agree with the trial court that counsel's "fool" comment was a strategic move to concede Profitt's obvious guilt of the misdemeanor charges and thereby establish credibility with the jury. "[G]ood trial tactics often demand complete candor with the jury[.] . . . [I]n light of the weight of the evidence incriminating a defendant, an attorney may be more realistic and effective by avoiding sweeping declarations of his or her client's innocence." (*People v. Mitcham* (1992) 1 Cal. 4th 1027, 1060-1061.) Significantly, the trial court specifically noted counsel's demeanor when making the comment, implying that counsel effectively communicated his purpose to the jury and did not inadvertently slight his client. We defer to the trial court's assessment of such matters. (Cf. *People v. Lenix* (2008) 44 Cal. 4th 602, 626–627 [appellate courts defer to trial court assessment of prosecutor's demeanor in making peremptory challenges allegedly based on race].) The trial court also reasonably found counsel's apparently dismissive "fool" comment was an attempt to portray Profitt as unsophisticated and thereby engender some sympathy. (*See People v. McGautha* (1969) 70 Cal.2d 770, 784 [reference to "'slob type defendants'" may have been intended to "elicit some feeling of sympathy from the jury"].)

We also conclude the "I'm really not a drinker" comment could have been a strategic move by counsel to gain respect from the jury by condemning irresponsible behavior, but nonetheless insisting on the jury's duty to acquit if the specific legal elements of the charged crime were not proved. In *People v. Wade* (1988) 44 Cal. 3d 975, for example, "trial counsel, faced with defending an appalling crime and responding to the prosecutor's pointed suggestions of a fabricated defense, made a [reasonable] tactical choice to candidly admit his client's guilt, acknowledge the heinous nature of the offense, and concentrate on the theory that defendant . . . was insane or incapable of forming the requisite criminal intent when the offense was committed. The fact that this argument ultimately failed is not a negative reflection on counsel's competence." (*Id.* at pp. 986–987, fn. omitted; *see People v. McGautha*, *supra*, 70 Cal.2d at pp. 783–784 [not error to tell jury defendant and his counsel would accept whatever verdict jury might deliver because "insist[ance] in the face of very weighty evidence of guilt that [defendant] be acquitted, counsel might well have impaired his credibility at the penalty phase"].) Notably, Profitt's counsel framed this part of his argument by urging the jury to adhere to its duty to apply the law and not be swayed by fear: "It is not a crime in California to drink and drive or even to be a little bit drunk. . . . The fear that is thrown at you, 'Oh, we can't have anybody on the road . . . [who took] a drink . . . .'" He expressed sympathy for the underlying fear—drinking and driving is "not a crime. Maybe it should be. I mean, I'm really not a drinker . . . . I'm certainly right there with [the prosecutor]. I don't want fools out there on the road drinking and driving any more than any of the rest of you do." Counsel then appealed to the jury's sense of justice: "what I want more than stopping that is that we have a system of justice that does not convict people because we don't like them . . . . [¶] 'Freedom is not worth having if it does not connote freedom to err.'" He went on to argue: "'You can protect your liberties in this world only by protecting the other man's freedom. You can be free only if I'm free.' . . . [W]e may not want to allow drunks on the road. . . . But

9

> that does not mean that you're allowed to suspend[] the rules of criminal justice and simply say, 'I'm going to disregard this conclusion, this reasonable inference, because I don't like it.'" Again, the fact this reasonable approach to closing argument was not effective in obtaining an acquittal does not mean Profitt received ineffective assistance of counsel.

Answer Ex. E at 17-19 (alterations and omissions in original).

The finding that trial counsel was effective in his tactical decisions was not objectively unreasonable. The court of appeal applied the proper standards and engaged in a thoughtful discussion of both claims. Profitt has not shown otherwise, either as a matter of law or fact. Profitt did not present a statement from trial counsel explaining the reasons for the trial tactics, or show that he attempted to secure such a statement. The record does not contain any evidence that might overcome the presumption that trial counsel's conduct was within the range of reasonable professional advice. *See Burt v. Titlow*, 571 U.S. 12, 23 (2013) (concluding that without any evidence demonstrating that counsel gave inadequate advice regarding withdrawal of a guilty plea, there is strong presumption that counsel's performance was not deficient).

The finding by the court of appeal that trial counsel made the statements to portray Profitt as unsophisticated and thereby engender the jury's sympathy also was not objectively unreasonable. There was overwhelming evidence that Profitt was guilty of the misdemeanors by driving with a suspended license. By refusing to plead guilty to these counts the jury heard about Profitt's prior DUI convictions. Trial counsel was left with very few options in light of the circumstances. It was a reasonable tactic to bring up all of these negative facts in an attempt to establish credibility with the jury and remind it that the prior DUIs were irrelevant to the current charges. *See Yarborough v. Gentry*, 540 U.S. 1, 9-11 (2003); *United States v. Fredman*, 390 F.3d 1153, 1157-58 (9th Cir. 2004) (affirming validity of "confession and avoidance" tactic to avoid diminishing credibility).

In addition, Profitt has not shown that the California Court of Appeal was objectively unreasonable in finding that the "I'm really not a drinker" comments were a reasonable trial tactic. The state court found that trial counsel could have been condemning inappropriate behavior by emphasizing that the jury must acquit if the elements of the crime were not proved. Profitt had admitted to the arresting officer that he had consumed four light beers in the previous five hours;

10

there was scientific evidence from the breath test that he had been drinking; his driving was somewhat impaired, as were his mental and physical faculties and his breath smelled strongly of alcohol. Trial counsel made his statement about not being a drinker while also emphatically arguing that it is not a crime to drink and drive if you are below the legal limit, that you cannot convict people because you do not like them and you must follow the rules of the criminal justice system.

"Although courts may not indulge '*post hoc* rationalizations' for counsel's decisionmaking that contradicts the available evidence of counsel's actions, . . . neither may they insist counsel confirm every aspect of the strategic basis for his or her actions. There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" *Harrington*, 562 U.S. at 109 (citations omitted); *Cullen*, at 196, ("But *Strickland* specifically commands that a court 'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'") (alteration in original) (quoting *Strickland*, 466 U.S. at 689-90). Profitt has failed to meet his burden in showing that trial counsel was deficient in light of the high standard for such claims. *See Yarborough*, 540 U.S. at 6.

Because the court of appeal found no deficiencies in trial counsel's conduct, it did not address the second *Strickland* element of prejudice. That is, of course, perfectly sound legally because a failure to establish either element is enough to bar a *Strickland* claim. *See Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998) (It is unnecessary for a federal court to address the prejudice prong of the *Strickland* test if the petitioner has failed to establish incompetence under the first prong.) The Court independently finds that no prejudice here.[2] Even assuming that trial counsel's performance was deficient, which is not the case, Profitt was not prejudiced. There was no defense to the misdemeanor charges of driving with a suspended license; Profitt had a suspended license, and he was driving. For the felony DUI conviction, there was also overwhelming evidence. The police officer observed Profitt driving erratically; Profitt's eyes were red and watery and his breath smelled of alcohol; he performed poorly on the field sobriety tests; and the multiple breathalyzer tests showed that his blood alcohol content was over the legal limit. Profitt also admitted to drinking several beers in the prior hours. Profitt presented expert evidence, but a de novo review of all the evidence presented shows that Profitt has not cleared the high legal hurdle to establish but for trial counsel's errors, the result of the proceeding would have

---

[2] The Court reviews this aspect of the *Strickland* claim de novo because the state court did not address it. *Rompilla v. Beard*, 545 U.S. 374, 390 (2005).

11

been different. *See Demirdjian v. Gipson*, 832 F.3d 1060, 1066 (9th Cir. 2016) ("[e]ven on de novo review, the standard for showing ineffective assistance is 'highly deferential.'").

**CERTIFICATE OF APPEALABILITY**

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Cases, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. *Id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, petitioner has made no showing warranting a certificate and so none is granted.

**CONCLUSION**

1. For the foregoing reasons, the petition for writ of habeas corpus is **DENIED**. A Certificate of Appealability is **DENIED**. *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

2. The Clerk shall close this case.

**IT IS SO ORDERED.**

Dated: January 15, 2020

JAMES DONATO
United States District Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARVIN PROFITT,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>LAKE COUNTY PROBATION DEPARTMENT, et al.,<br><br>　　　　　Defendants. | Case No. 17-cv-07136-JD<br><br>**CERTIFICATE OF SERVICE** |

　　　　I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

　　　　That on January 15, 2020, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Marvin Profitt
4678 Inyo Way
Kelseyville, CA 95451


Dated: January 15, 2020

　　　　　　　　　　　　　　　　　　　　Susan Y. Soong
　　　　　　　　　　　　　　　　　　　　Clerk, United States District Court


　　　　　　　　　　　　　　　　　　　　By: *Lisa R. Clark*
　　　　　　　　　　　　　　　　　　　　LISA R. CLARK, Deputy Clerk to the
　　　　　　　　　　　　　　　　　　　　Honorable JAMES DONATO